705 So.2d 33 (1997)
INSURANCE COMPANY OF NORTH AMERICA, Appellant,
v.
METROPOLITAN DADE COUNTY, Florida, Appellee.
No. 97-1050.
District Court of Appeal of Florida, Third District.
October 29, 1997.
Rehearing Denied February 25, 1998.
*34 Kimbrell & Hamann and James F. Crowder, Jr. and Kenneth C. Borden, Miami, for appellant.
Zelle & Larson and Lowry Barfield and Jeffrey S. Lapin, Miami; Colson, Hicks, Eidson, Colson, Matthews, Martinez & Mendoza, and Joseph Matthews, Miami, for appellee.
Before NESBITT, COPE and FLETCHER, JJ.
NESBITT, Judge.
In 1984, Metropolitan Dade County hired Interamerican Engineers and Constructors Corporation (Interamerican) to do certain construction work at Opa Locka Airport. Insurance Company of North America (INA) issued a common law performance bond for the work, therefore the provisions controlling the enforcement of a statutory bond are not at issue here. In October 1993, Dade filed a lawsuit for breach of contract against Interamerican, claiming the company had failed to properly attach the roofs on two airport buildings. The complaint alleged that the defects had been discovered in August of 1992, when portions of the roofs blew off during Hurricane Andrew. In October of 1994, Dade obtained a default judgment of $272,339.00, plus pre-judgment interest, against Interamerican. In May of 1996, Dade filed the present lawsuit against the surety, INA. The surety's subsequent motion for summary judgment was denied. Some month's later, on Dade's motion, the trial court adopted the county's position, and entered final summary judgment in Dade's favor for $272,339, plus pre-judgment interest. We reverse.
Dade argued that the INA bond incorporated the terms of the Interamerican contract and that the bond provided that it would remain in effect for such time after the county's acceptance of the project as was set out in the Interamerican contract. Included in that contract was the provision that the contractor would be liable for latent defects, when discovered. Dade alleged that the surety breached the bond terms by refusing to pay for the county's claimed damages or the judgment against Interamerican which followed.
Initially INA argued that the action was time-barred. We disagree with this contention. As the parties both agree, the trial court correctly determined the bond was a "common law" bond. It contained additional language in a number of areas that made the bond's coverage more expansive than a statutory bond. See Martin Paving Co. v. United Pacific Insurance Co., 646 So.2d 268 (Fla. 5th DCA 1994). Therefore, as provided in section 95.11(2)(b) Florida Statutes (1995) the proper limitations period for bringing this action was five years. However, because the bond by its terms tracked the language of the construction contract and because that contract assumed liability for latent defects, as discovered, the limitations period did not bar the instant claim, brought in 1996 on a defect discovered in 1992.
We do however conclude that INA should prevail based on the second argument that it advanced. INA maintained that it was discharged from liability by the county's failure to notify the surety when the defects *35 had been discovered, as required in the bond. The bond provided that upon notification,
the Surety shall:
1. Complete the Contract in accordance with its terms and conditions, or at the county's sole option,
2. Obtain a Bid or Bids for submission to the county for completing the contract in accordance with its terms and conditions, and upon determination of the County and the Surety of the lowest responsible Bidder, arrange for a Contract between such Bidder and the county....
Here, however, only when an action was instituted against Interamerican, long after the necessary repairs had been made, did the county notify INA. INA did not have the opportunity to comply with its agreed undertaking.
Dade is wrong in its assertion that upon any breach of its obligations to the surety, the county was entitled to summary judgment as a matter of law based solely on the default judgment it had obtained against Interamerican. The liability of a surety for the default of its principal was addressed in Restatement (Third) Suretyship & Guaranty Section 67(1995). That section advises that the default of a principal be treated only as evidence of a surety's liability. That section also observes that different courts have attached widely varying significance to such a principal obligor's default, and among the cases cited is Heritage Ins. Co. v. Foster Electric Co., 393 So.2d 28, 29 (Fla. 3d DCA 1981). Considering the Heritage opinion, we need not speculate how this court should treat the default the county held, as we have already considered and outlined such a judgment's evidentiary significance.
In Heritage, under similar circumstances, we found a default judgment to be prima facie evidence of the surety's liability, the burden then being on the surety to introduce evidence to rebut the liability claimed. Following this analysis, the default judgment Dade held against Interamerican was prima facie evidence of INA's liability, capable of being rebutted.
Here, the surety demonstrated that the duties and obligations it had assumed as to the county had not attached as to the instant claim because the county had failed to notify the surety of the claim, a requirement clearly outlined in the parties' agreement. The bond provided for notice to the surety, enabling INA to make the necessary repairs, or at Dade's option, requiring INA to submit the names of construction companies it was suggesting to make the repairs. According to Dade's own statements at the summary judgment hearing, the repair work was begun in September, 1992, and completed in May of 1993. Not until October of 1993, when an action was filed against Interamerican, was a letter sent to INA advising it of what had occurred. Under these circumstances we find persuasive Dragon Const. Inc. v. Parkway Bank & Trust, 287 Ill. App.3d 29, 222 Ill.Dec. 648, 678 N.E.2d 55 (1997). In Dragon a similar notice requirement was held to be a critical and bargained for provision of the surety contract. The failure to notify was held to be a material breach of the parties' agreement, stripping the surety of its contractual right to minimize damages. As in Dragon, Dade's failure to comply with the INA bond's notice provisions stripped the surety of its bargained for right and relieved the surety of its liability for the instant claim.
Accordingly, the summary judgment in Dade's favor is reversed with directions to enter judgment in favor of INA.