GAST MONUMENTS, INC., Plaintiff-Appellant, v. ROSEHILL CEMETERY COMPANY *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 1—88—3790

Opinion filed December 26, 1990.

Samuel A. Kavathas, Jr., of Chicago, for appellant.

Dan K. Webb, Steven F. Molo, and Julie A. Bauer, all of Chicago, for appellees.

JUSTICE RIZZI delivered the opinion of the court:

Plaintiff Gast Monuments, Inc., filed a *quo warranto* proceeding challenging defendant Rosehill Cemetery Company's right to sell headstones, burial markers and monuments for use in Rosehill Cemetery in Chicago, Illinois. The trial court entered summary judgment in favor of defendant. We affirm.

In 1859, the Illinois legislature adopted the Rosehill Charter, which created the original Rosehill Cemetery Company (Original Rosehill), as a not-for-profit corporation. At that time, corporations could only be formed by a special act of the legislature. Corporations that were created by a special act of the legislature are known as special charter corporations. The legislation creating a special charter corporation delineated the specific activities in which the corporation could engage, and on occasion, the legislation granted special privileges to the corporation.

The Rosehill Charter granted the Original Rosehill the right to ac-

quire real estate and to maintain a cemetery on the real estate. The Rosehill Charter also provided that the land actually used by the Original Rosehill for burial purposes, and which shall have been platted and recorded as cemetery grounds, shall be tax exempt. In 1863, the Rosehill Charter was amended, granting the Original Rosehill the power of eminent domain for the condemnation of adjoining lands to enlarge the cemetery. See "An Act to Incorporate the Rosehill Cemetery Company," Sec. 11 (1863); *People ex rel. J.H. Anderson Monument Co. v. Rosehill Cemetery Co.* (1954), 3 Ill. 2d 592, 597, 122 N.E.2d 283, 286.

In 1983, defendant was incorporated as a for-profit corporation pursuant to the Illinois Business Corporation Act of 1983 (Ill. Rev. Stat. 1987, ch. 32, par. 1.01 *et seq.*), under the name of Rosehill Memorial, Inc. Article 4 of the articles of incorporation for Rosehill Memorial, Inc., provides that the corporation is organized for the purposes of transacting "any or all lawful businesses for which corporations may be incorporated under the Business Corporation Act."

Shortly after it was incorporated, in 1983, Rosehill Memorial, Inc., purchased the assets of the Original Rosehill pursuant to an asset purchase agreement and took over operation of Rosehill Cemetery. Following the sale of its assets, in 1983, the Original Rosehill changed its name to the Rosehill Liquidation Corporation. In November 1983, Rosehill Memorial, Inc., changed its name to the defendant's present name, Rosehill Cemetery Company. The Rosehill Liquidation Corporation was dissolved in 1987. The lawful dissolution of the Rosehill Liquidation Corporation is not disputed. Thus, the not-for-profit corporation that was created pursuant to the Rosehill Charter no longer exists, although the Rosehill Charter was never repealed.

Defendant sells headstones, burial markers and monuments at Rosehill Cemetery for use in Rosehill Cemetery. The sales are made on a portion of defendant's property which is set aside for such sales. Plaintiff also sells headstones, burial markers and monuments, but from a location across the street from Rosehill Cemetery. Thus, plaintiff competes with defendant for the sale of the same articles for use in Rosehill Cemetery. Plaintiff, therefore, filed this *quo warranto* proceeding. Plaintiff's theory is that defendant's sales of headstones, burial markers and monuments are unlawful because of the Rosehill Charter. We disagree.

■ We first address the question of whether defendant receives any special benefits as a result of the Rosehill Charter. The designated portion of the property upon which defendant sells headstones,

burial markers and monuments for use in Rosehill Cemetery is not tax exempt, and defendant does not now claim that the property so designated is tax exempt. The land used by defendant exclusively as graveyards or grounds for burying the dead is tax exempt. In Illinois, "all lands used exclusively as graveyards or grounds for burying the dead" are exempt from taxes. (Ill. Rev. Stat. 1987, ch. 120, par. 500.3.) Thus, defendant's property that is tax exempt is not tax exempt as a result of the Rosehill Charter, but rather the tax exemption is pursuant to a statute which applies to all cemetery associations and corporations regardless of how they are formed. Plainly, defendant enjoys no tax exemptions, eminent domain powers or other privileges not enjoyed by other corporations that are incorporated under the Business Corporation Act.

■ Plaintiff next contends that defendant's acts violate the Rosehill Charter. Plaintiff's contention is misfocused. Defendant does not obtain the right to sell headstones, burial markers and monuments as a result of the Rosehill Charter. Rather, defendant obtains that right by virtue of its articles of incorporation under the Business Corporation Act, which provide that defendant was organized for the purposes of transacting any and all lawful businesses for which corporations may be incorporated under the Business Corporation Act. Under the provisions of the Business Corporation Act, a corporation may be organized for the purpose of operating a cemetery and selling headstones, burial markers and monuments, and there is no prohibition therein against the conducting of both activities by a single corporation. (See *People ex rel. Guettler v. Mount Olive Cemetery Association* (1962), 26 Ill. 2d 156, 157-58, 186 N.E.2d 39, 41.) It follows that the Rosehill Charter is not a factor in determining whether defendant can lawfully sell headstones, burial markers and monuments for use in Rosehill Cemetery.

Plaintiff relies upon *People ex rel. J.H. Anderson Monument Co. v. Rosehill Cemetery Co.* (1954), 3 Ill. 2d 592, 122 N.E.2d 283. In that case, Anderson sold burial markers and monuments across the street from the main entrance to Rosehill Cemetery. Anderson filed a *quo warranto* proceeding against the Original Rosehill, which at the time existed and was operating under the Rosehill Charter, and not under the Business Corporation Act. Anderson alleged that the Original Rosehill's sale of burial markers and monuments exceeded its powers under the Rosehill Charter. The Original Rosehill argued that the power to own and operate a cemetery carried with it the implied power to sell burial markers and monuments. In support of its argument, although it was not incorporated under the Business Corpora-

tion Act, the Original Rosehill relied on cases decided under the Business Corporation Act which hold that corporations may do all things convenient, suitable or necessary for performing the business designated in their articles of incorporation. The court rejected the Original Rosehill's argument, and stated:

> "It is also contended that the authority to own and operate a cemetery carries with it the implied power to offer for sale and sell monuments. Reference is made to the Illinois Business Corporation Act and many cases are cited to the effect that a corporation may do all things convenient, suitable or necessary to enable it to perform the business designated in the charter. *** These cases and many others are eminently correct, but they deal with implied powers of corporations which are not in the preferred class of the defendant. Rosehill is a *quasi*-public corporation with the right of eminent domain. [Citation.] It has certain other privileges not enjoyed by business corporations, including exemption from taxes. [Citation.] As a consequence, its powers should be strictly construed lest it be put in such a preferred position as to constitute a menace to free enterprise." *People ex rel. J.H. Anderson Monument Co. v. Rosehill Cemetery Co.* (1954), 3 Ill. 2d 592, 597-98, 122 N.E.2d 283, 286.

In contrast with the Original Rosehill, which was a special charter corporation, the defendant in the present case has no privileges that are not shared by other corporations formed under the Business Corporation Act. Here, if the defendant has an exemption from taxes, it has such exemption only to the same extent that it applies to all other corporations that are bound by the Business Corporation Act and which own and operate cemeteries in Illinois. The same is true with respect to any power of eminent domain that may or may not exist for such corporations that are bound by the Business Corporation Act.

It is therefore clear that the *Anderson* case is not applicable to the present case. The *Anderson* case involves only the scope of the powers of the Original Rosehill under the Rosehill Charter. In *Anderson*, the court held that the Original Rosehill, which had special privileges not enjoyed by other corporations, could not sell burial markers and monuments for profit because it was not expressly authorized to do so by the Rosehill Charter. The *Anderson* case does not hold that such articles could not be sold by a corporation created under the Business Corporation Act.

Plaintiff next contends that defendant succeeded to all the restrictions in the Rosehill Charter because the Rosehill Charter provided that the Original Rosehill shall have perpetual succession. We dis-

agree. The Rosehill Charter states:

"Section 1. That William B. Ogden, Charles G. Hammond, *** and such others as they may hereafter associate with themselves, be, and they are hereby created a body politic and corporate, in fact and in name, by the style and title of the 'Rosehill Cemetery Company,' and by that name shall have perpetual succession, and be capable of suing and of being sued, of contracting and being contracted with, of pleading and being impleaded, in any Court of law and equity in the State of Illinois: and they and their successor may have a common seal, and make and alter the same at pleasure, and do such other things as are incident to a corporation and not inconsistent with the Constitution of the State of Illinois."

Perpetual succession is not unique to the Rosehill Charter or cemetery corporations. The Business Corporation Act provides:

"General powers. Each corporation shall have power:

(a) To have perpetual succession by its corporate name ***.

(b) To sue and be sued, complain and defend, in its corporate name.

(c) To have a corporate seal which may be altered at pleasure ***.

* * *

(h) To incur liabilities; *** and to make contracts ***.

* * *

(r) To have and exercise all powers necessary or convenient to effect any or all of the purposes for which the corporation is formed." Ill. Rev. Stat. 1989, ch. 32, pars. 3.10(a), (b), (c), (h), (r).

■ The perpetual succession and pertinent language that is stated in the Rosehill Charter is similar to the perpetual succession and pertinent language that is stated in the Business Corporation Act. Contrary to plaintiff's contention, perpetual succession merely means that a corporation has an artificial life which extends beyond the natural lives of its incorporators, officers and directors. (See Black's Law Dictionary (5th ed. 1979).) Perpetual succession does not preclude a corporation from terminating its artificial life by dissolving, as the Original Rosehill did in the present case. (See 16A W. Fletcher, Private Corporations §8006 (rev. ed. 1988).) In addition, it does not mean that the restrictions or privileges in the incorporating document continue in perpetuity after the corporation has ceased to exist.

Plaintiff also contends that defendant does not have the legal

right to sell headstones, burial markers and monuments because of "Chapter 21 of Ill. Rev. Stat., Section 29, which refers to the transfer of ownership by cemeteries that were organized under a Special Act." Plaintiff argues: "This section states that a corporation may convey ownership *'for burial purposes only.'* The section does not mention the sale of memorials. Therefore, when Defendant purchased the assets of Rosehill Cemetery it was limited to burial purposes only which does not include the sale of memorials." Plaintiff's interpretation of the statute is strained and without merit.

Chapter 21 contains: "An Act to provide for the dedication of land for cemetery purposes." (Ill. Rev. Stat. 1989, ch. 21, par. 1 *et seq.*) Section 1 of "An Act in relation to cemeteries" provides:

"Extent of ownership

§1: All cemetery associations, or companies incorporated for cemetery purposes, by any general or special law of this State may acquire by purchase, gift or legacy, and may hold, own and convey for burial purposes only, so much land as may be necessary for use as a cemetery or burial place for the dead." (Ill. Rev. Stat. 1989, ch. 21, par. 29.)

█ Plainly, the words "for burial purposes only" in section 1 do not mean burial only. There is a difference between burial and burial purposes. The word "burial" is restricted to the act of interment. "Burial purposes," however, is not merely the interment itself, but rather encompasses acts that are intrinsic to the operation of a cemetery. These acts logically include grave marking, continuing care, the preservation and decoration of the place of interment, and the sale, purchase and placement of headstones, burial markers and monuments. See generally *People v. Rosehill Cemetery Co.* (1939), 371 Ill. 510, 516, 21 N.E.2d 766, 770.

█ Our conclusion is supported by the context and legislative intent of the statutes. Clearly, the words "for burial purposes only" in section 1 must be read in conjunction with the words "for use as a cemetery." (Ill. Rev. Stat. 1989, ch. 21, par. 29.) Indeed, the statute expressly states that it is an act "to provide for the dedication of land for cemetery purposes." (Ill. Rev. Stat. 1989, ch. 21, par. 1.) Thus, the context of the statute demonstrates that the legislative intent of the statute is to allow cemetery associations, or companies incorporated for cemetery purposes, to own, use and convey land for interments and related acts that are intrinsic in the operation of a cemetery, which include the sale, purchase and placement of headstones, burial markers and monuments. We therefore find no merit in plaintiff's contention.

Plaintiff also contends that "the restriction to sell memorials is a covenant that runs with the land" under the Rosehill Charter. To support its contention, plaintiff relies upon *Fairways of Country Lakes Townhouse Association v. Shenandoah Development Corp.* (1983), 113 Ill. App. 3d 932, 447 N.E.2d 1367. The *Fairways* case, however, is plainly not applicable here since it involved solely the question of whether a restrictive covenant between private citizens ran with the land. The alleged restrictions in the Rosehill Charter, to the extent that they exist, were enacted by the legislature. The principles dealing with restrictive covenants between private citizens, and whether such restrictive covenants run with the land, have no application here.

Moreover, corporate powers and purposes do not run with the land, but rather depend on the particular corporation's articles of incorporation. Although the defendant has the same name as the Original Rosehill that was incorporated under the Rosehill Charter, it is a separate and distinct corporate entity organized pursuant to the Business Corporation Act, and its powers and purposes are determined by its articles of incorporation.

■ There has been no consolidation or merger of the Original Rosehill and the defendant; and the defendant's existence is not a continuation of the Original Rosehill. The Original Rosehill changed its name to Rosehill Liquidation Corporation and was dissolved. Defendant is a separate and distinct corporation pursuant to the Business Corporation Act, and it must be regulated and treated as such for all purposes. See *Fairways*, 113 Ill. App. 3d at 936-37.

■ Accordingly, plaintiff's *quo warranto* proceeding challenging defendant's right to sell headstones, burial markers and monuments for use in Rosehill Cemetery is without merit as a matter of law. The trial court therefore properly entered summary judgment in favor of the defendant. The summary judgment is affirmed.

Affirmed.

CERDA, P.J., and WHITE, J., concur.